Board of Education v. School District No. 5, 21 N. M. 624.

---

[No. 1849, May 1, 1916.]
BOARD OF EDUCATION OF CITY OF ALBUQUERQUE v. SCHOOL DISTRICT No. 5 OF BERNALILLO COUNTY.

SYLLABUS BY THE COURT.

1.   Act Cong. Feb. 18, 1901, c. 380, 31 Stat. 796, granting certain lands to the city of Albuquerque, in trust, for certain designated purposes, concluded with the following proviso:

"Provided further, that if within the limits of the land hereby relinquished, there be any tract or tracts not held in private ownership, the title shall be vested in the city of Albuquerque in trust for the use and benefit of the public schools of each of the districts where such lands are severally situated."

Board of Education v. School District No. 5, 21 N. M. 624.

In the year 1901, when the grant was made, a certain de-scribed tract of land, embracing something over 70 acres, was not held in private ownership and was situated within school district No. 5, as then constituted. In 1911 the terri-tory immediately surrounding the said 70 acres was, upon petition, incorporated into the school district of the city of Albuquerque, which latter corporation brought suit against school district No. 5 to quiet its equitable title to the land in question.

Held, that the grant created a charitable trust; that at the time of the grant school district No. 5 presumably had known and definite boundaries, and that it was for the use and benefit of the public schools, within this known, defined area, that the trust was created; that the school district was mentioned, not as the beneficiary of the charity, but as a means of ascertaining such beneficiaries when the time should arrive for its administration; that, while the Albu-querque school corporation might equitably be entitled to a portion of the proceeds derived from such land, that such school corporation was not entitled to the whole thereof, and that the demurrer to its complaint should have been sus-tained.

P. 626

2. Charitable trusts include all gifts in trust for educa-tional and religious purposes in their every-varying diversity.

P. 628

Appeal from District Court, Bernalillo County; H. F. Raynolds, Judge.

Action by the Board of Education of the City of Albu-querque against School District No. 5 of the County of Bernalillo. From judgment for plaintiff, defendant ap-peals. Reversed, with directions.

A. B. STROUP of Albuquerque, for appellant.

On approval act of Congress, equitable title to the land vested in District No. 5.

Board of Education v. School District No. 5, 21 N. M. 624.

1 Perry on Trusts & Trustees, 581; Cushing v. Blake, 30 N. J. E. 689.

State only prescribes manner in which title to property vested in school district may be transferred.
Sec. 1592, C. L. 1897.

BURKHART & COORS of Albuquerque, for appellee.

Sole question is construction of act of Congress. Matters attending its passage material to such inquiry.
36 Cyc. 1102.

Public schools of the district are the beneficiaries of the trust.

### OPINION OF THE COURT.

ROBERTS, C. J.—This action was instituted in the court below by appellee to quiet its claimed equitable title to certain real estate against the appellant. Appellant filed a demurrer to the complaint, based upon the ground that the complaint failed to state facts sufficient to constitute a cause of action, which demurrer was overruled by the court. Appellant elected to stand upon its demurrer, and judgment was entered in accordance with the prayer of the complaint. From this judgment appellant prosecuted this appeal.

[1] The facts, as disclosed by the complaint, may be briefly summarized as follows:

In 1901 the Congress of the United States, by an act approved February 18, 1901 (chapter 380, vol. 31, U. S. Statutes at Large), passed the statute, set out in the foot note.* At the time this statute was enacted the real es-

---

* Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that there is hereby released and quitclaimed unto the city of Albuquerque, New Mexico, all the right, claim, title, and interest which the United States has, or may claim to have, to the land or any part thereof which was in eighteen hundred and eighty-three surveyed under the direction of the surveyor-general for New Mexico as the town of Albuquerque grant, the survey having been approved by the said surveyor-general on the twenty-eighth day of November, eighteen hundred and eighty-three, and including four Spanish leagues; and all the right, title, claim, and interest of the United States in and

Board of Education v. School District No. 5, 21 N. M. 624.

to the said premises embraced in the said grant is hereby vested in the city of Albuquerque in trust for the benefit of all persons claiming title to their individual holdings of real estate at the time of the acquisition of New Mexico under the treaty of Guadalupe Hidalgo and their successors in interest, or who have been in open adverse possession for the period of ten years prior to the passage of this act: Provided, that there is reserved from this grant and quitclaim all lands and buildings not occupied by the United States as an Indian school, or for other public purposes; and also reserving therefrom any private land grants that may have been, or may hereafter be, confirmed by the Court of Private Land Claims or other authority of the United States.

Section 2. That it is hereby made the duty of the mayor and clerk of said city, and of their successors in office, to execute proper deeds of quitclaim to the persons entitled thereto under this act for their respective holdings of real estate upon such claimants applying therefor and presenting proper deeds for the signature of such officers, without any expense to said applicants, and such deeds, when executed, shall be taken in all courts and places as a relinquishment of any claim or title to the lands herein described on the part of the United States: Provided, that such deeds shall not be made to persons where titles are in controversy in the courts until such courts shall have adjudicated the same, when deeds shall be made to the persons adjudged to be the owners: Provided further, that if, within the limits of the land hereby relinquished, there be any tract or tracts not held in private ownership, the title shall be vested in the city of Albuquerque in trust for the use and benefit of the public schools of each of the districts where such lands are severally situated.

tate involved in this suit was within the limits of said grant; was not held in private ownership and was "situated" in school district No. 5, appellant herein, and so remained within the exterior boundaries of said school district until December 4, 1911. Upon this date the board of education of the city of Albuquerque, appellee herein, acting upon a petition signed by a majority of the electors residing within the limits of certain described territory lying outside the boundaries of the city of Albuquerque school district, and pursuant to the provisions of section 1563, C. L. 1897 (section 4877, Code 1915), attached to the city of Albuquerque, for school purposes, certain described territory, which territory so attached to the city of Albuquerque, for school purposes, embraced the real estate involved in this litigation. The attached territory was carved partly out of school district No. 5, and partly out of school district No. 13.

The plaintiff in the court below prayed that the equitable title of the said lands be established in the board of education of the city of Albuquerque as against school district No. 5 of the county of Bernalillo, and that the plaintiff below be declared and adjudged to be the sole owner of the equitable title to the said land, and that the

defendant below be forever barred and estopped from having or claiming any right, title, or interest in or to said lands.

The act of Congress, supra, created a charitable trust to be administered by the city of Albuquerque, as trustee. The trust funds accruing from the rental or sale of the granted lands were for the use and benefit of the public schools of the district "where such lands are severally situated." The real beneficiaries were, of course, the patrons of the schools and the taxpayers of the school district entitled to receive the benefits of the grant

"When property is given in trust for the poor of a parish, or for the education of youth, or for pious uses, or for any charitable purpose, the beneficiaries are generally unknown, uncertain, changing and incapable of taking or dealing with the legal title; but such trusts are valid in equity, and courts of equity will administer them and protect the rights of the cestuis que trust." Perry on Trusts, § 66.

[2] "Charitable trusts include all gifts in trust for religious and educational purposes in their ever-varying diversity." Perry on Trusts, § 687; Crow ex rel. v. Clay County, 196 Mo. 234, 95 S. W. 369. The fact that the grant herein was made by the United States does not change the nature of the trust. Attorney General v. Eastlake, 11 Hare, 205.

Such being the nature of the grant, we must, of course, look to the instrument creating the trust for the purpose of determining who are the beneficiaries of the trust. At the time the act was passed by Congress, it had in contemplation the fact that, within the limits of the grant which it was making to the city of Albuquerque, as trustee, there would be certain unoccupied public lands; that such lands would be within the limits of certain organized school districts, and the object of its bounty was the public schools within such district.

Appellee's position must necessarily be that the object of the grantor's bounty was not the public schools within a school district, as it was organized at the time the grant was made, but that it was the public schools within a school district within whose limits such land might be

situate at some later date. It argues necessarily that because such lands were within the corporate limits of the Albuquerque school district in 1911, and continuously since such date, that such school district is the equitable owner of the real estate, notwithstanding the fact that such lands were within the boundaries of school district No. 5 at the time the grant was made.

If this contention were meritorious the equitable title to the land or the fund derived therefrom might be passed back and forth from school district to school district like a shuttlecock. Under section 4840, Code 1915, new districts may be formed, or old districts altered; territory detached from one and attached to another district. And, presumably, each succeeding district within whose boundaries the land in question might lie, could bring suit to establish its title to the land against all other districts wherein such land might once have been located.

Appellee argues that it is reasonable to presume that Congress intended to benefit by the grant the school children living in the territory immediately surrounding the tract, rather than those far removed therefrom. We quote from its brief as follows:

"The policy, purpose and object of Congress in creating the trust was clearly to benefit public schools, the public schools in the district where such land might be situate. The schools of that territory immediately adjacent to the land involved would be those most likely to use the said land to receive the greatest benefits therefrom. It is reasonable to presume that Congress intended to benefit by the grant the school children living in the territory immediately surrounding the tract, rather than those far removed therefrom; that Congress intended to aid those schools attended by children in the immediate territory surrounding the land, rather than those schools attended by children from other territory. The purpose of the act was not to endow any particular corporate school district in the county, but to aid the schools which were attended by and operated for the children living in the district where the tract is situate; that is, the children living in the territory adjacent to the tract. While the school directors of each district are made a body corporate by our state statutes and are vested with title to all school property in the district, it is not the corporate school district that is the real beneficiary under this act. The real beneficiaries are the public schools serv-

ing the people in the immediate vicinity of the land. If it had been the purpose of Congress to grant corporate school district No. 5 an indefeasible estate in the land, it may reasonably be said that it would have granted the said corporation the legal title also, or that it would have made provision for the deeding of the tract to the school district."

This argument is faulty, in this, that it ignores the plain language of the congressional act, which clearly grants the land, in trust, for the use and benefit "of the public schools of each of the districts where such lands are severally situated," and does not restrict the recipients of its bounty to such public schools as may be attended by pupils living in the territory immediately adjacent to the tract.

At the time of the grant, school district No. 5 presumably had known and definite boundaries, and it was for the use and benefit of the public schools, within this known, defined area, that the trust was created. The school district was mentioned, not as the beneficiary of the charity, but as a means of ascertaining such beneficiaries when the time should arrive for its administration. Board of Education v. Ladd, Adm'r, 26 Ohio St. 210. While no case directly in point has been cited by counsel, or discovered by the court, the Ohio case, last cited, may fairly be said to be somewhat analogous. In that case the testator bequeathed his property, "to be sold to the best advantage, and the proceeds thereof to be placed in the public school fund of Fairfield township, and the same to be applied to the education of the youth of said township." The court says:

"The only question submitted for determination in this case is whether the testator, in the third clause of his will, refers to Fairfield township as it existed territorially at the time of the execution of the will, or whether the reference is to the township as it might thereafter be constituted. The district court held that the reference was to the township as it then existed; and in this we see no error. If such is not the intent and meaning of the will, its operation might have been enlarged or diminished by the act of the county commissioners in changing the territorial limits of the township; or they might, by allotting the whole territory to other townships, have extinguished the township, and thus have defeated the bequest. Fairfield township, and the public

Board of Education v. School District No. 5, ·21 N. M. 624.

school fund of that township, are only referred 'to as furnish-
ing the means or instrumentality for reaching the intended
objects of the testator's bounty. * * * It is true, as a
general rule, that a will speaks from the death of the test-
ator, and not from its date, unless its language, by fair con-
struction, indicates the contrary. intention.' * * * 1 Red-
field on Wills, 379, par. 30. The present case comes within
this exception. Fairfield township is referred to in the will
as an existing territorial organization; not as the beneficiary
of the charity, but as the means of ascertaining such benefi-
ciaries when the time should arrive for its administration.
The objects of the charity can be as well ascertained since
as before the division of the township. The only effect of
the division seems to be that 'two agencies of a like nature
are required to execute the trust instead of one."

The reasoning of this case was approved by the Su-
preme Court of Missouri in the case of Crow ex rel. v.
Clay County, 196 Mo. 234, 95 S. W. 369.

Appellee suggested, upon oral argument, that the origi-
nal school district No. 5, as it existed in 1891, when the
congressional grant was made, had been subdivided into
three or four new districts, as well as portions of the dis-
trict incorporated into other districts, in like manner as
certain of its territory was added to the Albuquerque
school district. That the schools within that portion of
the original district, now numbered 5, are not equitably
entitled to the land or its proceeds. On the other hand,
appellant argues that where new districts were created
out of portions of original district No. 5, presumably an
equitable division of the assets, debts, and liabilities were
made, and that the land in question was awarded to the
district wherein it was located. These questions, how-
ever, are not involved in the present case, but are subject
to determination by a court of equity, upon proper appli-
cation. We are not required, in this case, to determine
whether school district No. 5, or rather the public schools
within such district, are the sole beneficiaries of the trust,
or whether the board of education of the city of Albu-
querque is entitled to an equitable interest in such land,
or· its proceeds. The only question here presented is
whether such city school board is the sole beneficiary of
the trust, and this question must be answered in the
negative.

For the reasons stated the case will be reversed, with directions to the trial court to sustain the demurrer to the complaint; and it is so ordered.

HANNA and PARKER, J.J., concur.